# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**HEATHER TAMARRA GILLILAND**                                **PLAINTIFF**

**VS.**                              **CIVIL ACTION NO. 3:18-cv-86-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                          **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("Commissioner") denying the application of Heather Tamarra Gilliland for supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.

The court, having reviewed the administrative record, the briefs of the parties, the applicable law, and having heard oral argument, finds the Commissioner's decision denying benefits should be affirmed.

### *Facts and Procedural History*

On October 31, 2013, Heather Tamarra Gilliland filed her application for SSI, alleging disability since January 1, 2011. After the application was denied at the lower levels, a hearing was held before an administrative law judge ("ALJ") on November 4, 2015, with a supplemental hearing on May 10, 2016. An unfavorable decision was issued on May 25, 2016. The Appeals Council denied review. The case is now before this court on appeal.

The ALJ found that Gilliland's back disorders, affective mood disorder, anxiety-related disorders, and personality disorder were severe impairments. After determining that the claimant

did not meet any listed impairment, the ALJ determined Gilliland's residual functional capacity, finding she could perform light work with the following limitations: lifting and/or carrying twenty pounds occasionally and ten pounds frequently; sitting, standing, and walking up to six hour in an eight-hour workday; and unlimited pushing and pulling up to her carrying capacity. The ALJ found she could understand, remember, and carry out simple and detailed instructions, respond appropriately to supervision, co-workers, and usual work situations—but would work best with objects rather than people—and deal with occasional changes in a routine work setting.

At step four, the ALJ found that Gilliland was incapable of performing past relevant work as a cashier. However, finding that the nonexertional impairments had little or no effect on the occupational base of unskilled light work, the ALJ determined that other jobs existed in significant numbers in the national economy and that claimant was not disabled.

The claimant asserts the ALJ's decision is not supported by substantial evidence and is not based upon proper legal standards because the ALJ erred in (1) evaluating Dr. Pamela Buck's reports, (2) weighing the state agency consultant's opinions, and (3) not ordering a physical consultative examination.

## *Law and Standard of Review*

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence

of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434(5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three, the ALJ must conclude claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R.

---

[1] *See* 20 C.F.R. § 404.1520 (2012).
[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[3] 20 C.F.R. § 404.1520(b) (2012).
[4] 20 C.F.R. § 404.1520(c) (2012).

Part 404, Subpart P, App. 1.[5] Fourth, claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education, and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which claimant can perform, claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

*Analysis and Discussion*

I. Dr. Buck

Dr. Buck performed two psychological consultative examinations on claimant in 2014 and 2016. In March 2014, she found Gilliland was "unable to interact appropriately with others consistently, able to manage her own finances, and fairly able to maintain attention and concentration. She is able to perform routine and repetitive tasks."[9] In February 2016, Dr. Buck opined that claimant was "unable to interact appropriately with others consistently, unable to manage her own finances, and unable to maintain attention and concentration. She is able to perform routine repetitive tasks, but is likely hindered by poor initiative and sustainability, as well as emotional instability."[10] The ALJ found that the record as a whole failed to support Dr. Buck's assessments, which the claimant asserts was error.

---

[5] 20 C.F.R. § 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that impairment is of such severity that it would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525 (2012).

[6] 20 C.F.R. § 404.1520(e) (2012).
[7] 20 C.F.R. § 404.1520(f)(1) (2012).
[8] *Muse*, 925 F.2d at 789.
[9] Doc. 8 at 424.
[10] *Id.* at 470.

In additional to relying on the state agency consultants, the ALJ reviewed the reports of claimant's nurse practitioners, Elizabeth Duncan and Anthony Newsom. The ALJ properly noted that these sources were not "acceptable medical sources." Nevertheless, he was entitled to consider evidence from all sources in determining claimant's RFC. Duncan found no abnormalities with claimant's attention, concentration, or memory during mental status examinations in May and August of 2014 and characterized her interpersonal relationships as "fair."[11] She was likewise found to have intact judgment and insight, as well as normal mood and affect. Similarly, Newsom found no evidence of anxiety during claimant's visits in November 2014, December 2014, or February 2015.[12] In March 2015, while presenting for eye pain, claimant was "not suicidal, no sleep disturbances, no anxiety, no depression, no personality change[,] and no emotional problems."[13] While claimant was marked as having a history of mental conditions, no mental conditions were listed as an "active problem." These findings are true for each of claimant's visits to Newsom. In fact, on her first visit, she reported no loss of interest in doing things she enjoyed; not feeling down, depressed, or hopeless; no trouble sleeping; no lack of energy; no eating disorders; no loss of confidence or suicidal ideations; no trouble concentrating; and no noticeable changes in her excitability/restlessness or movement/speaking speed.[14] She further stated that her depression was controlled.[15]

---

[11] *Id.* at 430-31; 441-42.
[12] *Id.* at 445-65.
[13] *Id.* at 446.
[14] *Id.* at 461.
[15] *Id.* at 465.

In short, the record fails to support Dr. Buck's assessment. The ALJ considered, evaluated, and weighed Dr. Buck's opinions in relation to the record as a whole, and substantial evidence supports his decision.

II. State Agency Consultants

Claimant argues the ALJ erred in accepting the mental opinions of state agency consultants over consultative examiner Dr. Buck. However, as previously found, the record fails to support Dr. Buck's opinions. State agency psychologist Dr. Hinson reviewed claimant's medical records in March 2014 and opined that claimant "appear[ed] capable of understanding and remembering at least simple instructions and work-like procedures" and could "maintain attention and concentration adequately. Claimant can complete a normal work-week without excessive interruptions from psychological symptoms, can interact appropriately with coworkers and supervisors on a limited basis, and can adapt to a work setting."[16] On reconsideration, Dr. Kossman found nothing in the file to the change the decision and endorsed Dr. Hinson's assessment.[17]

The non-opinion evidence of record, particularly the reports from Duncan and Newsom, supports the state agency consultants' opinions. The ALJ gave valid reasons for discounting claimant's subjective complaints and statements. The ALJ pointed out that claimant alleged disability beginning January 1, 2011. Although she was advised to resume psychotropic medication in January 2012, she did not do so until November 2013, after filing her current application for disability. Sparse treatment weighs against a finding of disability. *Parfait v.*

---

[16] *Id.* at 104.
[17] *Id.* at 144.

*Bowen*, 803 F.2nd 810, 813-14 (5th Cir. 1986). The ALJ noted that claimant reported playing computer games, which indicated her ability to concentrate. And although claimant reported obsessively counting and having a preoccupation with her father's death, even Dr. Buck found "no indication of evasiveness, loosening of associations, preoccupations, obsessions, delusions, or hallucinations *other than her report.*"[18] Finally, claimant's Global Assessment of Functioning score improved to 65—denoting only mild symptoms—when she was complaint with medication.[19] Notably, claimant was not receiving treatment or compliant with medication when Dr. Buck suggested significant psychiatric difficulties in February 2016. This history of non-compliance with mental health treatment and the evidentiary conflicts support the ALJ's evaluation of the evidence.

    III.    Lack of a Physical Consultative Examination

Claimant faults the ALJ for relying on the state agency consultants and nurse practitioners to craft a physical RFC rather than ordering a consultative examination. Claimant's argument, however, is unavailing.

While it is true that an ALJ may order a physical consultative examination and/or re-contact claimant's doctors, those actions are discretionary. The ALJ considered the opinions of Drs. James and Kossman, who reviewed claimant's December 2013 and June 2014 records and opined she could perform a full range of light work. Because the record, as discussed above, supports these findings, the ALJ did not err in giving them great weight. The ALJ also considered an MRI in October 2013 that revealed degenerative disc disease. Dr. Ashutosh

---

[18] *Id.* at 423 (emphasis added).
[19] *Id.* at 56, 443.

Mishra recommended follow-up in two weeks, yet there is no evidence of further treatment until claimant sought medical care at Aaron Henry Community Health Services in November 2014. Duncan and Newsom examined claimant multiple times at Aaron Henry, and their findings, along with those of the state agency consultants, support the ALJ's physical and mental RFC. Consequently, a physical consultative examination was not necessary.

## *Conclusion*

The court finds, therefore, that substantial evidence supports the ALJ's decision in this matter, and it is thus affirmed. A final judgment consistent with this opinion will be entered.

SO ORDERED, this the 3rd day of June, 2019.

/s/ David A. Sanders
  UNITED STATES MAGISTRATE JUDGE